## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TERRELL ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-00887-JD |
| | ) | |
| TRANS UNION, LLC and EQUIFAX | ) | |
| INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Before the Court are Defendants Equifax Information Services, LLC and Trans

Union, LLC's Joint Amended Motion for Judgment on the Pleadings ("Defendants'

Motion") [Doc. No. 38] and Plaintiff Terrell Roberts's ("Mr. Roberts") Motion for Leave

to File Second Amended Complaint[1] and Motion for Leave to File Final List of

Witnesses Out of Time ("Plaintiff's Motions") [Doc. Nos. 47, 48]. Mr. Roberts has not

filed a response to Defendants' Motion or requested additional time in which to do so.[2]

For the reasons stated below, the Court grants Defendants' Motion and denies Plaintiff's

Motions.

---

[1] Defendants filed a joint response in opposition to Plaintiff's Motion for Leave to File Second Amended Complaint. *See* [Doc. No. 49].

[2] Since Mr. Roberts failed to respond within the time limits prescribed by Local Civil Rule 7.1(g), the matters set forth in Defendants' Motion are deemed confessed. Regardless, based upon the Court's analysis below, Mr. Roberts has failed to establish Article III standing to bring his claims and alternatively, even assuming Mr. Roberts has standing, Defendants are entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

I.      **PROCEDURAL BACKGROUND**

Mr. Roberts initiated this action on August 11, 2025, asserting claims against Defendants under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. [Doc. No. 1]. Defendant Trans Union, LLC ("Trans Union") filed a motion to dismiss Mr. Roberts's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Doc. No. 8]. Defendant Equifax Information Services, LLC ("Equifax") subsequently filed a Rule 12(b)(6) motion to dismiss, asserting additional arguments and authorities in support of dismissal, and moved to join Trans Union's motion to dismiss. [Doc. No. 12]. On September 18, 2025, the Court ordered the parties to confer in good faith regarding the alleged deficiencies in Mr. Roberts's Complaint and to resolve as many disputes as possible without involving the Court. [Doc. No. 15 at 2].[3] In turn, Mr. Roberts filed an Amended Complaint ("Am. Compl.") [Doc. No. 16] on September 26, 2025, which mooted Defendants' motions to dismiss. *See* [Doc. No. 19]. Equifax and Trans Union filed Answers to Mr. Roberts's Amended Complaint on October 9 and 10, 2025, respectively. [Doc. Nos. 22, 23].

On November 19, 2025, the Court entered a Scheduling Order, establishing, among other deadlines, a fourteen-day deadline to amend pleadings and set August 5, 2026, as the deadline for the completion of discovery and the filing of dispositive

---

[3] The Court uses CM/ECF numbering from the top of the district court docket filings in this Order.

2

motions. [Doc. No. 29 ¶¶ 2, 6, and 7].[4] The Scheduling Order also required Mr. Roberts's

counsel to initiate and circulate a draft midway joint status report regarding the status of

discovery, anticipated motions, and overall status of the case to all other parties and file

the report on or before March 27, 2026. *Id.* ¶ 21. When nothing was filed by the March

27 deadline, the Court issued a show cause order directing Mr. Roberts to show cause by

May 27, 2026, why he had not complied with the Court's order. [Doc. No. 32 at 1].

Alternatively, in lieu of filing a show-cause response, the Court indicated the parties

could comply with the missed deadline and requirement by Mr. Roberts filing the parties'

joint status report by May 27. *Id.* The Court warned Mr. Roberts that failure to comply

with the Court's Orders may result in sanctions, including dismissal of the action without

prejudice. *Id.* at 2.

On May 25, 2026, Mr. Roberts filed a response to the Court's Show Cause Order

indicating that the noncompliance "resulted from an internal calendaring oversight."

[Doc. No. 33 at 1]. On May 26, 2026, Mr. Roberts filed the parties' Joint Status Report.

[Doc. No. 34]. On June 9, 2026, Defendants filed their motion for judgment on the

pleadings under Rule 12(c). [Doc. No. 38]. On June 22, 2026, Defendants filed their final

witness and exhibit lists pursuant to the deadline in the Scheduling Order. [Doc. Nos. 41,

---

[4] Mr. Roberts nonetheless argues that the Scheduling Order did not establish a separate deadline for motions to amend and that his motion is therefore timely because it was filed before the August 5, 2026 deadline. [Doc. No. 47 at 2]. The Court disagrees. The Scheduling Order expressly required that any motions to amend pleadings be filed within fourteen days of its entry. [Doc. No. 29 ¶ 2].

42, 43, 44].[5] On July 8, 2026, Defendants filed a joint notice informing the Court that their motion for judgment on the pleadings remained unopposed and that Mr. Roberts had missed his response deadline of June 30, 2026, and had not sought an extension. [Doc. No. 46 at 1].

Instead, on July 10, 2026, Mr. Roberts filed a motion seeking leave to amend his Amended Complaint over seven months after the Scheduling Order deadline for amended pleadings. [Doc. No. 47]. Additionally, on July 13, 2026, Mr. Roberts filed a motion for leave to file his final witness and exhibit lists out of time. [Doc. No. 48]. Rather than identifying specific exhibits in his proposed exhibit list, Mr. Roberts lists "[a]ny and all discovery and documents exchanged or obtained through discovery," "[a]ny discovery responses and documents produced during discovery and not objected to by Defendants," and "[a]ll exhibits attached to pleadings and motions not objected to by Defendants" as exhibits he "may use if the need arises." [Doc. No. 48-1 at 3–4]. On July 14, 2026, Defendants filed their response in opposition to Mr. Roberts's motion for leave to file a second amended complaint. [Doc. No. 49]. Mr. Roberts did not reply. With the deadlines for dispositive and *Daubert* motions quickly approaching, on July 24, 2026, Defendants filed an unopposed motion to extend those deadlines. [Doc. No. 50].

---

[5] Mr. Roberts's deadlines to file his final witness list and final exhibit list were June 5, 2026. *See* [Doc. No. 29 ¶¶ 4, 5]. He missed those deadlines.

## II.   <u>FACTUAL BACKGROUND</u>

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), the Court accepts the well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000). The Court applies this standard to the following facts asserted in Mr. Roberts's Amended Complaint. Am. Compl. [Doc. No. 16].

Mr. Roberts alleges that he is a consumer as defined by the FCRA and that Defendants are consumer reporting agencies ("CRA") that prepare and provide consumer reports to third parties for compensation. Am. Compl. ¶¶ 7, 8, 10, 12. Mr. Roberts obtained copies of his consumer credit disclosures from Defendants on March 16, 2025. *Id.* ¶ 13. Mr. Roberts alleges that Defendants failed to comply with the obligations under 15 U.S.C. § 1681g(a) to clearly and accurately disclose all information contained in his consumer file, subject to the statutory exception regarding truncation of Social Security numbers. *Id.* ¶¶ 14, 15, 21, 23.

Mr. Roberts alleges that Equifax's disclosure contained inaccuracies and omissions regarding one account, while Trans Union's disclosure contained inaccuracies and omissions regarding four accounts. Specifically, as to Equifax, Mr. Roberts alleges that the disclosure for the Jefferson Capital LLC account omitted the full account number (providing only the last four digits), available credit, payment history, credit limit, actual and scheduled payment amounts, the dates of last activity and last payment, the activity

designator, deferred payment start date, balloon payment date and amount, term duration, charge-off amount, date the account was closed, and the creditor's name. *Id.* ¶ 20. As to Trans Union, Mr. Roberts alleges that the disclosures for the Discover Bank, Jefferson Capital System, LVNV Funding LLC, and Portfolio Recovery accounts omitted the full account numbers with the payment history also missing for the Discover Bank account. *Id.* ¶¶ 25, 27, 28, 29, 30.

Mr. Roberts alleges that Defendants knowingly and intentionally failed to disclose all information contained in his credit file and that the omissions were motivated by a desire to reduce operational costs and increase profitability. *Id.* ¶ 33. Mr. Roberts contends that Defendants' alleged violations of the FCRA were willful, or alternatively negligent. *Id.* ¶¶ 43, 44. He seeks actual, statutory, and punitive damages along with costs and attorney's fees in "an amount to be determined" under the FCRA. *Id.* ¶ 43. Defendants move under Rule 12(c) for judgment on the pleadings.

## III.    LEGAL STANDARDS

### A.    Defendants' Motion

Rule 12(c) of the Federal Rules of Civil Procedure governs Defendants' Motion. Rule 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard governing a motion for judgment on the pleadings under Rule 12(c) is identical to that applied to a motion to dismiss under Rule 12(b)(6). *See Brown v. Montoya*, 662 F.3d 1152, 1160 n.4 (10th Cir. 2011); *Atl. Richfield Co. v. Farm Credit Bank of Wichita*,

226 F.3d 1138, 1160 (10th Cir. 2000). That is, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## B.    Plaintiff's Motions

Rules 16(b)(4) and 15(a)(2) of the Federal Rules of Civil Procedure govern Plaintiff's Motion for Leave to File Second Amended Complaint, and Rule 16(b)(4) governs Plaintiff's Motion for Leave to File Final List of Witnesses Out of Time. "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citation omitted); *see id.* at 1240–41 (joining other circuits and "hold[ing] that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so").

Rule 16(b)(4)'s good cause showing "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Id.* at 1240 (citation modified). Its good cause requirement is "the threshold inquiry" to determine "whether amendments should be allowed after a scheduling order deadline has passed." *Id.* at 1241. The district court has "considerable discretion in determining what kind of showing satisfies" the good cause standard under Rule 16(b)(4). *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) (quoting 3 Moore's Federal Practice § 16.14[1][b] (3d ed. 2019)).

Rule 15(a)(2) requires this Court to "freely give leave [to amend] when justice so requires."[6] Fed. R. Civ. P. 15(a)(2). Amendment should be freely permitted when justice requires, but not if there exists "any apparent or declared reason" to deny the amendment, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

If the movant fails to satisfy either standard—(1) good cause under Rule 16(b)(4) or (2) Rule 15(a)—then the Court may properly deny the motion for leave to amend. *Gorsuch*, 771 F.3d at 1241. But "if the movant fails to show good cause under Rule 16(b), there is no need for the Court to move on to the second step of the analysis, i.e.,

---

[6] Mr. Roberts cannot amend as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), and Defendants do not consent to the amendments, *see* Fed. R. Civ. P. 15(a)(2).

8

whether the movant has satisfied the requirements of Rule 15(a)." *Tesone*, 942 F.3d at 990 (citation modified).

## IV.    ANALYSIS

### A.    Defendant's Motion

The FCRA provides consumers with a private right of action against CRAs that violate statutory duties under the FCRA. *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1147 (10th Cir. 2012). As noted above, Mr. Roberts alleges that Defendants violated § 1681g either willfully or negligently. Section 1681g(a) requires every CRA to "clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request," with certain exceptions. 15 U.S.C. § 1681g(a). The FCRA defines the term "file" as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." *Id.* § 1681a(g). Where noncompliance with the FCRA is found, § 1681n provides recovery for willful noncompliance and § 1681*o* provides recovery for negligent noncompliance. *See id.* §§ 1681n, 1681*o*. As a threshold matter, Defendants contend that Mr. Roberts has failed to allege a concrete injury sufficient to establish Article III standing. The Court agrees.

### *(1)    Mr. Roberts fails to allege facts sufficient to establish Article III standing.*

"To have standing, a plaintiff must show that [he] '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184,

9

1190 (10th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). An injury in fact must be both "'concrete and particularized' and 'actual or imminent.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Although a concrete injury need not be tangible, it must be "real" rather than "abstract." *Lupia*, 8 F.4th at 1190 (citation omitted). Moreover, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Thus, a plaintiff does not automatically satisfy Article III merely by alleging a violation of the FCRA. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021); *see id.* at 434 (explaining that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm"). As the party invoking federal jurisdiction, Mr. Roberts bears "the burden of demonstrating that [he has] standing." *Id.* at 430–31.

Here, Mr. Roberts alleges that Defendants violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose all information contained in his consumer file. However, the Amended Complaint fails to allege facts establishing that Mr. Roberts suffered a concrete injury as a result of the alleged statutory violations.

The only economic injury identified in the Amended Complaint is the cost of the postage Mr. Roberts incurred in mailing his request for a copy of his credit file. Am. Compl. ¶¶ 22, 37. That expense was incurred to obtain the disclosure itself, not as a

consequence of Defendants' alleged failure to comply with § 1681g.[7] The postage expense is insufficient to confer standing because it was incurred in an effort to obtain information regarding the alleged statutory violation, rather than as a consequence of that violation. Such self-inflicted investigative costs do not constitute a concrete injury for purposes of Article III. *See TransUnion*, 594 U.S. at 441–42 (explaining that an "asserted informational injury that causes no adverse effects cannot satisfy Article III" and reiterating that "the risk of future harm on its own does not support Article III standing"); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) (explaining that a plaintiff "cannot manufacture standing by incurring costs in anticipation of non-imminent harm").

Additionally, Mr. Roberts's conclusory allegations that he suffered emotional distress, along with anxiety, depression, fear, numbness, self-hatred, and a difficulty regulating his emotions, are insufficient to confer standing. *See id.* at 416 (explaining that a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). The Amended Complaint contains no factual allegations describing the nature, severity, duration, or consequences of the alleged distress. Nor does Mr. Roberts allege that Defendants furnished inaccurate information to any third party, that he was denied credit, that the terms of any existing credit account were changed, that he was charged a higher interest

---

[7] This appears to only apply to Mr. Roberts's request for his file from Trans Union because his request to Equifax appears to have been done online through the Internet; therefore, he would have incurred no postage expense. *See* Am. Compl. ¶¶ 13, 22, 37.

rate, or that he otherwise suffered any adverse credit consequence as a result of the alleged omissions in Defendants' disclosures. Mr. Roberts's generalized assertions of confusion and emotional distress and the nominal expense of mailing his disclosure request are insufficient to establish a concrete injury under Article III. *See Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 828, 830 (10th Cir. 2022) (explaining that allegations of confusion are insufficient to satisfy Article III standing when there is no concrete injury or asserted harm that has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit under common law). Accordingly, Mr. Roberts has failed to allege facts sufficient to establish Article III standing.

**(2)    *Mr. Roberts fails to state a plausible claim for a violation of § 1681g of the FCRA.***

Defendants contend that Mr. Roberts fails to state a plausible claim under § 1681g because he does not allege facts showing that Defendants disclosed inaccurate information but alleges only that certain information was omitted, or account numbers were truncated, which, standing alone, is insufficient to state a claim. Section 1681g requires a CRA, upon request, to "clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). As the Supreme Court has recognized the purpose of § 1681g is to enable consumers to learn "of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties." *TransUnion*, 594 U.S. at 440; *see also Ward v. Nat'l Credit Sys., Inc.*, No. 25-1078, --- F.4th ---, 2026 WL 2083123, at *4 (10th Cir. July 20, 2026) (stating "that the entire focus of the FCRA's obligations . . . is to prevent

*inaccurate* reporting) (emphasis in original). Recently, in the context of a FCRA unreasonable investigation claim against the furnisher of information to a CRA, the Tenth Circuit concluded that for a consumer to establish a prima facie case, the consumer must establish that "the information was in fact inaccurate or incomplete." *Ward*, 2026 WL 2083123, at *7; *see id.* at *5 (explaining that "inaccuracy (or incompleteness)" is a prerequisite to establishing the actual but-for causation required for a negligence claim under § 1681*o*); *see also Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (unpublished) (reiterating that a successful FCRA claim must be based on inaccurate information disclosed in the consumer credit report and because the plaintiffs had no evidence indicating that the credit reports were inaccurate, the defendant was entitled to summary judgment) (citing *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002)).

District courts within the Tenth Circuit have similarly concluded that to state a claim under § 1681g, a plaintiff must allege facts to show an "inaccuracy in the credit report issued by" the CRA defendant or plead specific facts supporting the inference that the CRA failed to disclose all of the information in the consumer's file.[8] *See Lewis v. Midland Credit Mgmt.*, CIV-15-1052-R, 2016 WL 4747414, at *2 (W.D. Okla. Sept. 12, 2016); *see also Dotson v. Nat'l Consumer Telecomms. & Util. Exch., Inc.*, Case No. CIV-25-1171-SLP, 2026 WL 575337, at *2 (W.D. Okla. Mar. 2, 2026); *Scott v. Equifax, Inc.*,

---

[8] Defendants cite to no Tenth Circuit authority substantively addressing violations of § 1681g, and the Court is aware of none.

Case No. 2:20-cv-2516-HLT-JPO, 2021 WL 4099007, at *2 (D. Kan. July 23, 2021). When assessing compliance with § 1681g, courts consider whether the disclosure clearly and accurately communicates the information in the consumer's file in a manner that an average consumer can understand. *Dotson*, 2026 WL 575337, at *2 (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018)). In light of the text of § 1681g and this persuasive authority, the Court determines that Mr. Roberts has failed to allege a plausible violation of § 1681g.

Here, Mr. Roberts identifies account data that allegedly was not included in his consumer disclosures, including payment history, credit limits, scheduled payment amounts, dates of last activity, and other information. He also alleges that truncated account numbers were used. But he does not allege facts showing that Defendants inaccurately reported any information contained in his file or explain how the alleged omissions rendered the disclosures inaccurate or misleading. Nor does Mr. Roberts allege that the purported omissions prevented him from identifying or disputing inaccurate information in his file. Mr. Roberts assumes that the omission of any information, without more, constitutes a violation of § 1681g. That is not enough to state a plausible claim under the FCRA.

Notably, a CRA "does not originate the underlying data" in the credit report, but rather "gathers information provided by data furnishers and makes that information available to consumers." *Dotson*, 2026 WL 575337, at *3 (brackets, quotation marks, and citation omitted). Defendants assert that because § 1681g requires disclosure only of the

information contained in the consumer's file at the time of the request, they cannot disclose information that was never furnished to them by the data furnisher with respect to a particular account. The Court finds Defendants' argument persuasive.

Mr. Roberts also alleges that Defendants violated § 1681g by disclosing only truncated account numbers. The Court is not persuaded that this allegation, standing alone, states a plausible claim. Mr. Roberts does not allege that the shortened account numbers rendered the disclosures inaccurate or prevented him from identifying the accounts at issue. Nor does he allege that the truncation impaired his ability to review his file or dispute inaccurate information. Absent factual allegations that the abbreviated account numbers frustrated the statutory purpose of § 1681g—to enable consumers to review and correct information contained in their files—the Amended Complaint fails to plausibly allege that the disclosures were not clear and accurate. *See* 15 U.S.C. § 1681g(a); *see also Dotson*, 2026 WL 575337, at *3 (explaining that utilization of a truncated account number is a reasonable practice to guard against identity theft and concluding that holding a CRA liable for reporting a truncated account number that a creditor furnished "would lead to absurd results"); *accord Whitaker v. Trans Union Corp.*, Civil Action No. 03-2551-GTV, 2005 WL 8160827, at *20 (D. Kan. Feb. 3, 2005) (same). Accordingly, Mr. Roberts has failed to state a plausible claim for relief under § 1681g.

***(3)***      ***Mr. Roberts fails to state a plausible claim that any alleged violation of the FCRA was willful within the meaning of § 1681n.***

Defendants next contend that Mr. Roberts has failed to plausibly allege a willful violation of the FCRA under 15 U.S.C. § 1681n. The Court agrees. A CRA acts willfully under the FCRA if it intentionally violates the statute or acts "in reckless disregard of its duties under the FCRA." *Birmingham v. Experian Info. Sols., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007)). Here, Mr. Roberts alleges that Defendants knowingly and intentionally failed to disclose all information contained in his credit file and that the omissions were motivated by a desire to reduce operational costs and increase profitability. Am. Compl. ¶ 33. Mr. Roberts contends that Defendants' alleged violations of the FCRA were willful, or alternatively negligent. *Id.* ¶¶ 43, 44. These allegations, however, amount to little more than conclusory assertions. The Amended Complaint contains no factual allegations supporting the inference that Defendants knowingly or recklessly disregarded their statutory obligations. Nor does Mr. Roberts allege facts showing that Defendants were aware their disclosures failed to comply with the FCRA yet continued those practices in conscious disregard of the statute.

Instead, Mr. Roberts merely recites the legal conclusion that Defendants acted willfully and attributes an economic motive to their conduct. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).[9] Accordingly, Mr. Roberts fails to plausibly allege that Defendants willfully violated the FCRA.[10]

## B.    Plaintiff's Motions

### (1)    Motion for leave to amend

Mr. Roberts seeks leave to amend his Amended Complaint. Mr. Roberts has made no showing of diligence or otherwise explained why the amendment could not have been sought before the deadline. *See* [Doc. No. 29 ¶ 2]. Mr. Roberts was aware before the deadline that Defendants intended to file their Motion. In the parties' Joint Status Report and Discovery Plan filed on November 18, 2025, which is prepared and filed after the parties confer and jointly prepare the report,[11] Defendants asserted that they anticipated

---

[9] Nor does the Federal Trade Commission's ("FTC") informal staff letter attached to the Amended Complaint plausibly establish willfulness under § 1681n. [Doc. No. 16-3]. Informal FTC staff opinion letters lack the authoritative force contemplated by *Safeco* and, standing alone, do not support a plausible inference that Defendants knowingly or recklessly violated the FCRA. *Safeco Ins. Co.*, 551 U.S. at 70 & n.19.

[10] On July 28, 2026, Mr. Roberts filed a Notice of Supplemental Authority [Doc. No. 51] directing the Court to an order entered by another district judge in an unrelated case. Under Local Civil Rule 7.1(l), a party may file a notice of supplemental authority without leave of court where the "authority [is] directly relevant to an issue raised in a pending motion . . . *issued after a party's final brief on that motion has been filed . . . .*"). (emphasis added). But here, Mr. Roberts never filed a brief in opposition to Defendants' Motion or sought leave to oppose it out of time, so the Notice of Supplemental Authority is improper and the Court strikes it. Alternatively, even if the Court were to consider it, the Court does not find it persuasive or material to the disposition of Defendants' Motion. A district court decision does not constitute binding precedent, nor does the supplemental authority alter the Court's analysis or disposition.

[11] *See* LCvR16.1(a); Fed. R. Civ. P. 26(f); *see also* [Doc. No. 24].

filing motions for judgment on the pleadings under Rule 12(c). [Doc. No. 27 at 4 ¶ 6].

Instead, Mr. Roberts waited approximately seven months after the amendment deadline

and sought leave only after Defendants filed a dispositive Rule 12(c) motion.[12] Such

timing weighs heavily against a finding of good cause. *See Pallottino v. City of Rio

Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (affirming denial of leave where

amendment appeared to be an attempt to avoid an adverse ruling); *see also Gorsuch, Ltd.,

B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1242 (10th Cir. 2014) (affirming

district court's denial of motion under Rule 16(b)(4) where the parties "lacked good

cause for the delay in amending their complaint"); *Strope v. Collins*, 315 F. App'x 57,

61–62 & n.4 (10th Cir. 2009) (unpublished) (explaining that the record "supports the

district court's finding" of lack of good cause to modify scheduling order where the pro

se prisoner "failed to even address the untimeliness of the motion to amend" and the

record indicated awareness of need to amend before the deadline) (citation modified)).

Even if Mr. Roberts could satisfy Rule 16—which he has not—the Court would

deny leave under Rule 15. Although Rule 15 embodies a liberal amendment policy, leave

may properly be denied for undue delay, undue prejudice, a dilatory motive, or futility.

*Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365–66 (10th Cir. 1993). At the time Mr. Roberts

filed his motion, the deadlines for discovery and dispositive motions were less than a

---

[12] Defendants again noted they planned to file motions for judgment on the pleadings in the parties' midway joint status report filed on May 26, 2026. [Doc. No. 34 at 2].

month away. Permitting amendment at this late stage would require reopening or extending discovery, likely necessitate additional motion practice, and substantially delay resolution of the case.

As Defendants point out in their response, Mr. Roberts and his counsel failed to appear for Mr. Roberts's properly noticed deposition, did not seek a protective order before the scheduled deposition, and otherwise failed to diligently prosecute this action. [Doc. No. 49 at 7]. According to Defendants, Mr. Roberts's belated motion to amend is a dilatory attempt to revive claims challenged in the pending Rule 12(c) motion and, if permitted, would substantially prejudice Defendants by requiring additional discovery and delaying the resolution of this case. *Id.* Such prejudice to Defendants provides an independent basis for denying leave. Accordingly, Mr. Roberts's motion for leave to amend is denied.

### (2)    *Motion for leave to file witness and exhibit lists out of time*

Mr. Roberts also seeks leave to file witness and exhibit lists out of time. As with Mr. Roberts's untimely request to amend, modification of the Scheduling Order requires a showing of good cause under Rule 16(b)(4). Mr. Roberts has not demonstrated diligence or explained why the witness and exhibit lists could not have been timely filed. Moreover, discovery closes August 5. Allowing Mr. Roberts to disclose witnesses and exhibits now would prejudice Defendants by depriving them of a meaningful opportunity to investigate the witnesses, conduct depositions, and prepare dispositive motions before

the close of discovery. Accordingly, Mr. Roberts's motion to file a witness and exhibit lists out of time is denied.

## V.   **CONCLUSION**

Based on the foregoing reasons, Defendants' Motion [Doc. No. 38] is GRANTED, Plaintiff's Motions [Doc. Nos. 47, 48] are DENIED, and Defendants' Unopposed Motion to Stay Discovery [Doc. No. 39] and Unopposed Motion for Extension of Dispositive and *Daubert* Motions Deadline [Doc. No. 50] are DENIED as MOOT. The Court STRIKES Plaintiff's Notice of Supplemental Authority [Doc. No. 51].

It is further ordered that Plaintiff's Amended Complaint [Doc. No. 16] is DISMISSED WITHOUT PREJUDICE for lack of Article III standing. Alternatively, even assuming Mr. Roberts has standing, the Amended Complaint fails to state a claim upon which relief can be granted under Rule 12(c). A separate judgment will follow.

IT IS SO ORDERED this 30th day of July 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE